IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASE |
| | ) | NUMBER 02-21669 |
| DURANGO GEORGIA PAPER COMPANY, | ) | |
| DURANGO GEORGIA CONVERTING | ) | |
| CORPORATION, and DURANGO GEORGIA | ) | JOINTLY ADMINISTERED |
| CONVERTING LLC | ) | |
| | ) | |
| Debtors | ) | |
| | ) | **FILED** |
| PENSION BENEFIT GUARANTY | ) | Lucinda B. Rauback, Clerk |
| CORPORATION | ) | United States Bankruptcy Court |
| | ) | Brunswick, Georgia |
| Movant | ) | By cking at 4:45 pm, Jan 18, 2017 |
| | ) | |
| v. | ) | |
| | ) | |
| DURANGO GEORGIA PAPER COMPANY, | ) | |
| DURANGO GEORGIA CONVERTING | ) | |
| CORPORATION, and DURANGO GEORGIA | ) | |
| CONVERTING LLC | ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER
GRANTING PARTIAL SUMMARY JUDGMENT ON OBJECTION TO CLAIM

This matter is before me on the Motion for Allowance of Claim ("Motion") by the Pension Benefit Guaranty Corporation, taken as a motion for summary judgment on the amended and restated objection to claim ("Objection") by the Debtors acting by and through their Liquidating Trustee. At issue is the PBGC's claim number 1581 for unfunded benefit liabilities of the Durango-Georgia Paper Company Pension Plan for Hourly Employees

("UBL Claim" or "Claim"). This Opinion and Order resolves the only remaining question raised by the Objection that is ripe for summary judgment: the method by which the Claim is calculated.[1]

The PBGC asserts that nonbankruptcy law controls, specifically Title IV of the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. §§ 1301-1461, with its implementing regulations. (Mot. 1, ECF No. 2713.) Under ERISA, the Claim would be calculated using the assumptions in a regulation codified at 29 C.F.R. pt. 4044.41-.75 ("Valuation Regulation"). (Mot. 4.)

The Liquidating Trustee asserts that the Bankruptcy Code controls and that the Claim must be calculated under bankruptcy valuation principles. (Resp. 4, ECF No. 2716.) Such independent valuation could mean applying a "prudent investor" standard instead of the Valuation Regulation, refashioning the Valuation Regulation with different interest rate and discount rate assumptions, or using some other approach to determine the present value of the Claim. (Id.)

The PBGC is correct. ERISA and its regulations control the calculation of the Claim.

---

[1] I have already ruled that the Claim is sufficient on its face as to validity and amount and that there is no dispute that the UBL Claim, to whatever extent allowed, is a general unsecured claim not entitled to priority. (See Interim Order on Motion for Summary Judgment, ECF No. 2714.)

2

## CONCLUSIONS OF LAW

### I.

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, applicable here under Bankruptcy Rules 7056 and 9014(c), provides for summary judgment when the movant is entitled to judgment as a matter of law, having shown the absence of genuine dispute as to any material fact. "[A] party moving for summary judgment bears the initial burden of showing, by reference to the record, that there is not a genuine issue of material fact." Velten v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515, 1523 (11th Cir. 1993)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The court reviews the evidence in a light most favorable to the opposing party, with all reasonable doubts and inferences resolved in the opponent's favor. Amey, Inc. v. Gulf Abstract & Title, Inc., 758 F.2d 1486, 1502 (11th Cir. 1985).

Here, there is no issue of material fact precluding summary judgment on the legal question of how the Claim is calculated. The PBGC has not, however, shown the absence of a genuine dispute

3

as to the amount of the Claim, notwithstanding the Declaration and related exhibits attached to its Reply Brief (ECF No. 2719). The PBGC is therefore entitled only to partial summary judgment.

II.

**Because the Valuation Regulation Is Not Contrary to or Qualified By Any Provision of the Bankruptcy Code, the Valuation Regulation Controls the Calculation of the UBL Claim.**

The only mandatory authority on the calculation of the UBL Claim is the following statement of law by the United States Supreme Court: "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, *subject to any qualifying or contrary provision of the Bankruptcy Code*." Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000) (emphasis added).

It is undisputed that ERISA is the underlying substantive law that created the Claim. ERISA defines the UBL Claim and requires that the Valuation Regulation be used to determine the amount of the Claim. See 29 U.S.C. § 1301(a)(18)(A)-(B). Thus, the question of whether the Valuation Regulation is either contrary to or qualified by the Code is dispositive in deciding how the Claim is calculated.

4

Both parties argue that their respective positions are consistent with Raleigh. The PBGC is correct; the Liquidating Trustee is not.

## A.
## The Valuation Regulation Is Not Contrary to or Qualified By § 502(b) of the Bankruptcy Code.

### 1. The UBL Claim Has Already Been Reduced to Present Value.

The Liquidating Trustee argues that because the Valuation Regulation prescribes the discount rate that determines the present value of the benefit liabilities, the Valuation Regulation conflicts with the Bankruptcy Code's requirement that the court determine the amount of claims, 11 U.S.C. § 502(b). (Resp. 10-19.) This argument is misplaced, because the UBL Claim is not a stream of future payments.

Two lines of cases address the application of § 502(b) to the PBGC's claims for unfunded benefit liabilities in bankruptcy. The cases relied on by the Liquidating Trustee implicitly understood these liabilities as belonging to the debtor and extending into the future. See PBGC v. Belfance (In re CSC Indus., Inc.), 232 F.3d 505 (6th Cir. 2000); PBGC v. CF&I Fabricators of Utah, Inc. (In re CF&I Fabricators of Utah, Inc.), 150 F.3d 1293, 1300 (10th Cir. 1998) ("Inasmuch as those liabilities are for beneficiaries' payments that extend into the future, the amount of the liability must be reduced to present

5

value so the debt can be dealt with under the reorganization plan."); LTV Corp. v. PBGC (In re Chateaugay Corp.), 126 B.R. 165, 177 (Bankr. S.D.N.Y. 1991), *aff'd*, 130 B.R. 690 (S.D.N.Y. 1990), *vacated*, 17 Empl. Benefits Cas. (BNA) 1102 (S.D.N.Y. 1993) ("[T]he proper methodology for valuing a claim based on an obligation of the Debtors to make cash payments subsequent to the Filing Date . . . ."); LTV Corp. v. PBGC (In re Chateaugay Corp.), 115 B.R. 760, 771 (Bankr. S.D.N.Y. 1990), *vacated*, 17 Empl. Benefits Cas. (BNA) 1102 (S.D.N.Y. 1993) ("[T]he present value of the claims must be determined in accordance with federal bankruptcy law concepts as to which applicable discount rate governs the aggregate periodic liabilities to plan beneficiaries over the period during which such payments will be due.").

Because these courts conceived claims for unfunded benefit liabilities as claims for future payments on which the debtor was liable, they ruled accordingly that § 502(b) required discounting the claims to present value and that the bankruptcy court had the authority to decide the valuation method. Believing that the PBGC's valuation method overstated the claim, these courts adopted what has become known as the "prudent investor" standard. See In re Chateaugay, 126 B.R. at 175 ("[C]laims for a series of cash payments in the future should be discounted to present value

6

by a discount factor which when prudently invested would allow the obligations to be met as they became due.")

But the analysis in these cases is flawed.

First, all but one predate the Supreme Court's decision in Raleigh. And the single post-Raleigh opinion misreads that decision as applying only to the validity of a claim, not to its amount. See In re CSC Indus., 232 F.3d at 509 ("While the *validity* of a claim might be a matter for nonbankruptcy law, bankruptcy courts have the statutory authority to determine the *allowability* and *amount* of the claim."). As another court examining these issues in light of Raleigh pointed out, "[I]t is simply not a correct reading of Raleigh to say that nonbankruptcy law determines only the abstract validity of the claim—that is, whether the debtor has *some* liability to the creditor—as divorced from the *amount* of the claim." In re U.S. Airways Group, Inc., 303 B.R. 784, 793 (Bankr. E.D. Va. 2003).

Second, the more recent—and better reasoned—cases understand a claim for unfunded benefit liabilities not as a stream of future payments for which the debtor is liable but as the PBGC's present right, granted by statute, to recover an amount determined under the same statute. In re U.S. Airways, 303 B.R. at 793 ("Here, both the debtor's liability to the PBGC and the amount of that liability are not only creatures of statute,

7

but of the same statute."); see also Dugan v. PBGC (In re Rhodes, Inc.), 382 B.R. 550, 559-60 (Bankr. N.D. Ga. 2008) ("[T]he point is that the claim has already been reduced to a present value in accordance with Congressional authorization.") Under this analysis, the debtor has no liability for future payments to the beneficiaries; that liability belongs to the PBGC. In re Rhodes, 382 B.R. at 560. Comparing the PBGC's claim to a claim based on a judgment or an arbitration award, the Rhodes court noted that in neither of those scenarios would the bankruptcy court have the authority to recalculate the claim when an entity other than the bankruptcy court had determined the amount and the debtor was bound by that decision. Id. at 558-60.

Consistent with U.S. Airways and Rhodes, I hold that the Valuation Regulation is not contrary to or qualified by § 502(b). First, the UBL Claim is not a claim for future payments; it is an obligation that is enforceable now.[2] Second, the PBGC was authorized by statute to determine the amount of the Claim, and

---

[2] The Liquidating Trustee argues that the PBGC does not have a present right to payment under a "Special Rule," 29 U.S.C. § 1362(b)(2)(B), that requires the PBGC to accept installment payments when the termination liability exceeds 30% of the plan sponsors' collective net worth. (Obj. ¶¶ 71-73, ECF No. 2711; Resp. 12 n.7, ECF No. 2716.) The PBGC retorts that the purpose of the Special Rule is to prevent ERISA liability from putting a company out of business and that there is no risk of that here. (Mot. 20, ECF No 2713.) The PBGC is correct, the Debtors having been out of business and in bankruptcy for fourteen years. See Durango-Georgia Paper Co. v. H.G. Estate, LLC, 739 F.3d 1263, 1267 (11th Cir. 2014).

AO 72A
(Rev. 8/82)

its determination under the Valuation Regulation is binding on the Debtors and therefore on this Court.[3]

### 2. The Time Gap Between the Date of the Petition and the Date of Plan Termination Does Not Implicate § 502(b).

Under the Valuation Regulation, the amount of the Claim is fixed as of the Pension Plan termination date ("DOPT"). See 29 U.S.C. § 1362(b)(1)(A). The Liquidating Trustee argues that the Valuation Regulation thus conflicts with the Bankruptcy Code's requirement that the amount of the claim be determined as of the date of the petition, 11 U.S.C. § 502(b). (Obj. ¶¶ 78-92; Resp. 4-10.) Because the actuarial calculations for retiree benefits are date-dependent, the sixteen-month gap between the petition date and the DOPT means the amount of the UBL Claim would be different if calculated on the petition date instead of the DOPT. (Resp. 7.) According to the Liquidating Trustee, both the PBGC and the courts that have addressed the issue of termination liability have "gloss[ed] over" what the Liquidating Trustee sees as a "glaring discrepancy between the Code and ERISA." (Id.)

The Liquidating Trustee misunderstands the meaning of "as of the date of the filing of the petition" in § 502(b). According to

---

[3] The Liquidating Trustee raises the question of whether the UBL Claim includes unmatured interest, which would be disallowed under § 502(b)(2). (Obj. ¶¶ 74-77, ECF No. 2711; Resp. 19-21, ECF 2716.) The PBGC counters that it did not add unmatured interest to the Claim. (Reply 8, ECF No. 2719.) This "show your work" question is not appropriate for summary judgment, and I do not address it except to observe that the Liquidating Trustee's argument for "imputed" unmatured interest (Resp. 20) is contrary to my ruling that the Valuation Regulation controls.

9

a leading bankruptcy treatise, this phrase means that a proof of claim should contain only prepetition claims or claims deemed to arise as of or before the petition date. 4 Collier on Bankruptcy ¶ 502.03[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). As to liability, a claim is contingent if the debtor's obligation to pay depends on the occurrence of a future event. 2 Collier on Bankruptcy § 109.06[2][b].

Here, as of the petition date, the PBGC had an unliquidated contingent claim that under the substantive law of ERISA became fixed as to liability and amount on the DOPT sixteen months later. There is thus no conflict between the Valuation Regulation and the phrase "as of the date of the filing of the petition" in § 502(b).

### B. The Valuation Regulation Is Not Contrary to or Qualified By § 1123(a)(4) of the Bankruptcy Code.

Relying on the same cases as under § 502(b), the Liquidating Trustee argues that using the Valuation Regulation to calculate the UBL Claim is contrary to the Bankruptcy Code's requirement

10

that a chapter 11 plan provide the same treatment for each claim or interest in a particular class, 11 U.S.C. § 1123(a)(4). "Debtors submit that § 1123(a)(4) is completely relevant to the extent that it would prohibit a creditor from inflating its claim amount through a self-serving determination of its claim and, thus, dominate a class at the expense of other creditors . . . ." (Obj. ¶ 59, ECF No. 2711.)

As the courts in CF&I and CSC Indus. saw it, valuing the PBGC's claim using the PBGC's investment assumptions conflicted with § 1123(a)(4) because the PBGC's discount rate would not apply to any other general unsecured creditor. In re CF&I Fabricators, 150 F.3d at 1301; see also In re CSC Indus., 232 F.3d at 508 (implying that use of the PBGC's investment assumptions in bankruptcy would constitute "preferential treatment"). For these courts, treating the PBGC like any other general unsecured creditor meant valuing the PBGC's claim under the "prudent investor" standard.

Here again, the analysis in these cases is flawed.

Reasoning from the fundamentally different understanding that the PBGC has a present right to recover, the more recent cases see no conflict between determining the amount of the PBGC's claim using the PBGC's assumptions and the requirement under § 1123(a)(4) that claims in the same class be treated the

same. See In re U.S. Airways, 303 B.R. at 794 ("So long as all claims are determined in accordance with applicable nonbankruptcy law, there cannot be any genuine issue of disparate treatment.").

As the court in Rhodes explained, the purpose of § 1123(a)(4) has nothing to do with the correct computation or the allowance of claims. 382 B.R. at 556. Its purpose is to assure equality of distribution under the plan and to protect the integrity of the voting process. Id. ("Section 1123(a)(4) prevents a plan proponent from rigging the vote of a particular class by providing for more favorable treatment to a claim that by virtue of its amount controls whether or not the class accepts the plan."). In Rhodes, as long as the plan did not provide for a larger, disproportionate dividend to the PBGC compared to other members of the class, the PBGC's claim would not implicate § 1123(a)(4). Id. at 556-57.

The reasoning and the result in U.S. Airways and Rhodes are consistent with the Supreme Court's view that "[b]ankruptcy courts . . . are limited to what the Bankruptcy Code itself provides." Raleigh, 530 U.S. at 24-25. I therefore hold that there is no conflict between the Valuation Regulation and § 1123(a)(4).

### C.
### The UBL Claim Arose Under ERISA, Not Contract Law.

The Liquidating Trustee argues that on the date of the petition, the Pension Plan was an executory contract novated upon the Plan's termination by the PBGC. Because the Debtors' chapter 11 plan rejected all such contracts, the UBL Claim must be either allowed or disallowed under § 502(g), which governs claims arising from the rejection of executory contracts. (Obj. ¶ 99, ECF No. 2711.) The Liquidating Trustee is mistaken.

The UBL Claim is a statutory claim under 29 U.S.C. § 1362 and ERISA provides the sole means of pension plan termination, Phillips v. Bebber, 914 F.2d 31, 34 (4th Cir. 1990). As a result, pension plans cannot be rejected as executory contracts, and § 502(g) does not apply.

### ORDER

"[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Execs.' Ass'n, 491 U.S. 490, 510 (1989).

There being no conflict between the Valuation Regulation and the Bankruptcy Code and no qualification of the Valuation Regulation by the Bankruptcy Code,

13

**IT IS THEREFORE ORDERED** that the PBGC's Motion for Summary Judgment on the Objection is **GRANTED IN PART**; and

**FURTHER ORDERED** that the calculation of the PGBC's claim for unfunded benefit liabilities is controlled by the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1301-1461 (2012 & Supp. II 2014).

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 18 day of January, 2017.